Good morning, all. Our first case this morning is Emmis v. Illinois National Insurance. Mr. Craig? Good morning, Your Honors, and may it please the Court. The insurance policy that Emmis purchased from Illinois National included a specific event exclusion for claims related to previous litigation. That litigation involved efforts to convert Emmis from a publicly held company to a privately held company. Emmis failed in that go-private effort in 2010 in part because it could not get votes from two-thirds of the preferred shareholders in favor of the proposed go-private transaction. The litigation resulting from that failed transaction was defended by Emmis' insurer, Chubb. In October of 2011, Emmis purchased an insurance policy from Illinois National that explicitly excluded coverage for matters reported to Chubb as well as for matters related to or arising out of the previous litigation. By way of factual background, in 2011 and 2012, Emmis worked to gain control of at least two-thirds of its preferred shares, the control that had earlier caused its go-private transaction to fail. Those efforts, that is, the efforts to gain voting control of the preferred shares, resulted in litigation with preferred shareholders, three of which had objected to the previous go-private transaction. That's the lawsuit known as the Core Opportunities Fund and the lawsuit for which Emmis sought coverage from Illinois National. Emmis reported that lawsuit to both Chubb and to Illinois National, and Illinois National declined coverage for three reasons. First, the Core Opportunities Fund lawsuit is related to the events as those are defined in the policy, which is specifically the previous shareholder litigation resulting from the 2010 go-private transaction, as well as the Alden action, which was an action brought by a preferred shareholder related to Emmis' instigating litigation as a result of the failed go-private transaction. Is the most significant connection, in your view, that the money came from the Alden settlement? That is certainly the reason that we contend the lawsuit, the Core Opportunities Fund lawsuit, is related to and arises out of the Alden action. The COF suit also arises out of and relates to the shareholder litigation because the operative facts as reflected in the original First Amendment and Second Amendment complaint, as well as a summary judgment order from the District Court and the Core Opportunities Fund suit, show that an important part of that previous litigation was control of the two third shares. And Emmis actually reported, when it successfully gained control of two thirds of those preferred shares, that it may elect to amend the terms of the preferred shares that would eliminate the difficulties that it earlier had with approval for a go-private transaction. So it could never try to take the company private and get coverage if shareholder litigation resulted, even if there had been a ten year gap and the infusion of cash to make that possible came from a source other than this Alden settlement? Well, it would be possible if, I suppose if there had been a ten year gap, it's unlikely that this particular specific event exclusion would have been negotiated and included in the policy. And as for coverage for the litigation that actually ensued, although Chubb denied coverage for the COF suit, Chubb had earlier denied coverage for the Alden action, but when pressed by Emmis, it had ultimately covered it as related to the shareholder litigation. And this Core Opportunities Fund suit as well would be related both to that shareholder litigation. I see your argument for its relationship to the Alden settlement that was used to fund it. I guess I'm having a harder time with understanding what your argument is for the relationship to the first one. That really does seem pretty broad. It seems to me that what you're saying is he had a plan to take the company private. And so any effort that he thereafter undertook to take the company private related to that first suit. Is that the argument you're making? Because it was part of that same plan that he wanted to execute? Yes. So that, I mean, that is a fair reading of the broad exclusion that relates to the specific events, the shareholder litigation. The connection is actually a little tighter, though, because it involved not just a new go private. While it didn't involve a new go private transaction, it involved trying to resolve one of the specific issues that had been an obstacle to that 2010 go private transaction. Namely, control of the preferred shares. And really, we need to show only that it relates either to the Alden action or to the shareholder litigation. Because it relates to the Alden action. The Alden action is indisputably an event under the policy. And therefore, if the core opportunities fund suit arises from or relates to that Alden action, it is excluded. And finally, it's important also to note that the core opportunities fund suit actually is an event because it was reported to Chubb under the earlier Chubb policy as related to the previous litigation. That was a report made by Emmis' broker. So they lose coverage if any employee calls Chubb and reports it. As the district court pointed out, that's pretty broad. If it's not backward looking, claims that have already been reported to Chubb, essentially. Anybody without authorization calls Chubb, just thinks it's this employee's responsibility to do it, even if it is in fact not. That has the effect of destroying coverage because someone reported it to Chubb? If the employee had not been authorized to make the report, I suppose Emmis would have an argument that the report was not made by Emmis. It was made by some employee acting without proper authorization. But in the facts of this case, the suit was reported by Emmis' broker. And there's a good reason it was reported. The Alden action was also reported as related to the shareholder litigation. And some thought must have gone into making the report. Because the Chubb policy period had ended before the core opportunities fund suit was filed. And therefore, the only reason to report the event, the core opportunities fund suit to Chubb, would be based upon a belief that the COF suit was related. So they weren't sure, right? Chubb ends and then you pick up. They have two policies and they're not sure. So maybe they thought it was Chubb, maybe they thought it was you. But you're saying that reported certainly means in that policy that if they guess wrong, they're done. That is what the exclusion provides, yes. Well, it depends how you read reported. I suppose it does. But I think if we read reported as Emmis urges, that is, and as the district court did, that is, anything reported to Chubb before the inception of the Illinois national policy, then the exclusion really becomes meaningless. Because it would cover only losses that Chubb, or I'm sorry, that Emmis knew about, right? If they had already reported the loss, then it certainly wouldn't be something to be reported to Illinois national under a new policy because it would already be an existing loss or claim. And so to make sense of that language, it really has to be read as reported to mean as reported to Chubb under this prior policy. And that can be either in the past or in the future. Because if it encompasses only past claims, it's really not an effective exclusion at all. And further, when you read the as reported exclusion as the unambiguous language suggests and as Illinois national has argued, then it really harmonizes with the other provisions. That is, Emmis is going to report claims to Chubb that are related to or arise from either the shareholder litigation or the Alden action because that's how there would be coverage under the Chubb policy. And there was some briefing about the as reported versus reported. As reported is more than just the simple past tense. We saw it in the dictionary definition of when considered in a specific form. And so it's really making clear that it's talking about the report as it's actually made to Chubb rather than reported before October 1, 2011. Certainly the policy doesn't say that. As I indicated, that would render the policy, that portion of the exclusion, meaningless. So again, I think it's undisputed that both the shareholder litigation and the Alden action are events. And Emmis admits in its coverage complaint that the initial complaint in the COF suit contained allegations that the preferred stock repurchase plan was motivated by the failure of this 2010 go private attempt. Now, Emmis goes on to argue that because some of the specific allegations related to Emmis' intent or motivation were eliminated in the second amended complaint, that that shows that they're really not, they're not related. But I think importantly, paragraph 57 of the second amended complaint, which Emmis acknowledges is the operative complaint, alleges, quote, Emmis also announced that the enactment of the proposed amendments, that is the proposed amendments to the preferred shares, meant that the likelihood of success in going private transactions, if any, will increase as there will be fewer requirements to be satisfied with respect to the preferred stock in connection with the going private transaction. So that's actually in the operative complaint. And the district court in the Core Opportunities Fund suit included a discussion of the filing that Emmis made to the Securities and Exchange Commission, where Emmis stated that if it succeeded in obtaining a two-thirds vote, it may elect to, among other things, amend various provisions applicable to the preferred shares. So the Core Opportunities Fund suit, which again was brought by plaintiffs that included those who had, some of whom had objected to the going private transaction, clearly related to and arose from this prior going private transaction, which resulted in the shareholder litigation. Now the district court actually stated in its opinion that if the specific event exclusion is read literally, then there is no coverage. But then it held basically that a literal reading would result in illusory coverage. But that's not right. I mean, this is a specific event exclusion excluding litigation related to this prior litigation. It doesn't exclude whole classes of claims based upon the nature of the claim, such as that it arises under federal securities law. It is, while the language is broad and being related to or arising out of, it is tailored and was included as a manuscript endorsement to this policy, tailored to the facts of Emmis' situation because of this prior litigation. And that's why the citations that Emmis relies upon, particularly the American States versus Kiger case, simply aren't applicable. First, you know, Kiger, of course, didn't involve a director and officer policy. It involved a CGL, a commercial general liability policy. It interpreted the term pollutant, and so it was a broad exclusion based upon a class of substances rather than specific events. And importantly, I think the court stated, the Indiana Supreme Court stated in Kiger that, you know, the breadth of the exclusion was not what was at issue. It was the ambiguity, that is, because pollutant is sometimes, you know, because gasoline, which was the substance at issue in the case, can sometimes be a pollutant and sometimes not, depending upon where it is and how it's used, that it would construe that against the insured. But there's no similar ambiguity here, and although Emmis attempts to argue that the mere breadth of the language arising from or related to makes this ambiguous, there's really no support in Indiana case law for that idea that breadth alone makes a policy ambiguous. In fact, Kiger says exactly the opposite. The other case that Emmis relies upon, I think it's USA Life Insurance v. Knuckles, involved a life insurance policy, and it involved just a, the court, it seems clear, was troubled by the fortuity of the person dying as a result of the carbon monoxide inhalation before the fire, because it was purely fortuitous that one happened before the other, and therefore it seems the court simply found it would be an absurd result to construe the exclusion that way. Here we have an exclusion that was tailored to prior litigation, and then we have an insured who is seeking coverage for events that are indisputably related to that prior litigation, and seeking coverage not only from its present insurer, but also from its previous insurer, because the litigation is in fact related to that prior litigation. I see I'm at about five minutes, which I've asked to reserve for rebuttal, so if there are no further questions, I'll go sit down. All right. Thank you, Mr. Craig. Mr. Shockley. Good morning. May it please the court. The shareholder suits and the Alden suit on one hand and the COF suit on the other are not related. They were brought by different plaintiffs alleging different operative facts in support of different causes of action or different injuries and different remedies at very different times. This means that none of the exclusions apply to any of the causes of action in any version of the complaint that was filed in the COF suit, but that conclusion is especially magnified with respect to the second amended complaint. Let's kind of review the timing here just a little bit. The original complaint was filed in April of 2012, and Emmis gave notice to Illinois National at the time of the filing. There's an amended complaint filed a month later. The parties engage in extensive discovery. There's a two-day evidentiary hearing in front of Judge Barker, and she issues her preliminary injunction order denying preliminary injunction on August 31st of 2012. And in that order, she says there is no evidence to support a conclusion that the stock transactions that Emmis engaged in in 2012 were intended to or likely to result in a going private transaction. That's at 892 FedSub 2nd, page 1098. She concluded there was no evidence to support the conclusion that there was a going private transaction afoot. The plaintiffs in the COF case learned their lesson. They filed a second amended complaint, and in that complaint, they withdrew the allegation that the transactions in 2012 were motivated by Jeff Smillian's frustration over not being able to take the company private in 2010, and that he had the intent to take the company private in 2012. Judge Barker's findings did away with that. The COF plaintiffs, again, learned their lesson, withdrew the allegation. Five or six months later, Illinois National finally gets around to making its first coverage determination. And in that coverage determination, they say there's no coverage because these motive and intent allegations in the original complaint, which hasn't been operative for more than six months, those allegations link this COF lawsuit to the go private transactions that happened in 2010. So it appears that by that time, the only people who believed that there was a going private transaction afoot in 2012 was Ennis's insurer. Now, the insurer, under black letter Indiana law, had an obligation to conduct a reasonable investigation of the facts underlying the complaint before they denied coverage, and they had an obligation to deal with their insurer in good faith. At minimum, these obligations mean that Illinois National should have paid attention to what Judge Barker said in her preliminary injunction order and to what the COF plaintiffs said in their Second Amendment complaint. But instead, they continued to cling to these motive and intent allegations and deny coverage. I want to address some of the specific exclusions here, and I hope you're all comfortable with the nicknames that I gave them in the brief. I thought it was easier than 2A and 3C and so forth. But the reported claims exclusion that you have asked about, Your Honor, it's ambiguous. It's ambiguous. There is no parsing the difference between reported and as reported that answers the question of whether it applies to claims that were reported at the time Illinois National's coverage became effective or at any time. Can you address Illinois National's argument that that exclusion would be meaningless if it referred only to claims already reported? Yes, Your Honor. In their brief, they referred to the known loss doctrine. Well, the loss in this case is the defense costs that MS incurred in its successful defense of the COF case. Those defense costs started when the COF lawsuit was filed. That loss wasn't known before the Illinois National policy became effective, and therefore it's not known. Losses for situations like there's a house fire three days before a policy takes effect and the basement is still smoldering when the policy takes effect, clearly you had a known loss at that point. In this situation, the loss wasn't known until the COF suit was filed. They don't say that we knew that the COF suit was going to be filed. They say that it somehow relates back to the 2010. So I don't think that the known loss argument really carries any weight. The known loss argument, part of the I might be missing something, is that related to the exclusion for claims reported as reported? Yes. They say that if you read it the way MS wants to read it, it would render it meaningless because known losses are already excluded. Well, there was no known loss with respect to the COF case at the time the Illinois National policy took effect. The losses, the defense costs began when the lawsuit was filed. So there's that. So on the related claims exclusion, Mr. Craig talked about the two cases that we relied on. The distinctions they make are the finest of distinctions. The Kiger case tells us that when you have an exclusion that purports to eliminate the core coverage for which the policy was issued, in that case you had a gasoline station that had a garage liability policy, and it purported to exclude coverage for gasoline leaks. And the court said, well, you can do that if you're clear, but you better be very explicit about it. And if you're not explicit, the exclusion is ambiguous and we're going to construe it in favor of coverage. So here, Emmes, the only defendant in the Second Amendment complaint, has only securities claim coverage. Its only coverage is for securities claims. And by definition, a securities claim is a lawsuit brought by a shareholder alleging some breach of duty or violation of the law in connection with the purchase or sale of securities. So in the shareholder lawsuit, you had securities claims. They alleged that Jeff Smullyan wanted to buy up all the common stock and he wanted to convert all of the preferred stock either to debt or to common stock. And so you have those allegations about Emmes' preferred and common stock. So if you read this exclusion as broadly as Illinois National wants to read it, that means that every claim, as your Honor said, every claim that's filed that has anything to do with preferred or common stock is excluded by this related facts exclusion. Kiger says no. If you want to do that, if you want to exclude the core purpose of the policy, you had better do it explicitly. And if you don't, we're going to hold that it's ambiguous. And if it's ambiguous, we're going to construe it in favor of coverage. So Illinois National's reading of that exclusion would destroy the coverage that Emmes paid for and accepted and enhanced retention for. Its retention for securities claims was $1 million. The other retentions were $500,000. So the exclusion isn't explicit, and therefore it's ambiguous. It's also ambiguous because we've got a definition of interrelated wrongful acts that's incorporated into that exclusion that doesn't even require wrongful acts.  The exclusion of interrelated wrongful acts would at least require some kind of wrongful conduct. And also this formulation of related to related facts alleged is without boundary. I have yet to hear Illinois National say what the practical boundaries are for that exclusion. Ten years? Well, maybe. Five years? Two years? There is no practical boundary, and the Allen case, which we cited in our brief, says that where there are no practical boundaries, exclusion is ambiguous and, again, to be construed in favor of coverage. I don't think I'll go into the Knuckles case, but it provides independent grounds for concluding that the exclusion doesn't apply. When the clear language of a policy leads to absurd results, it's a rule of contract construction. It's not a matter of illusory coverage. It's a rule of contract construction, and it means that we will fix the language in the least damaging way, and that's exactly what Judge Lawrence did. Under the wrongful acts exclusion, the point I want to stress there is in their brief, Illinois National says that there's this extremely broad coverage. It's a claim alleging or in any way related to, directly or indirectly, in whole or in part, to a wrongful act alleged in the COF suit. If they're related to the wrongful acts alleged in the shareholder Alden suit. My point is that this extremely broad connection exists between the claim, the COF suit, and the wrongful act within that claim. Well, the COF suit already alleges wrongful acts, so we don't need to inquire about whether it more broadly relates the two. And the wrongful acts that were alleged in COF are not related to the wrongful acts that were alleged in the shareholder Alden suit. In the shareholder suit, the wrongful acts were the breaches of fiduciary duty by the board of directors for failing to get maximum price for the shares and for failing to provide information the shareholders needed to vote on the merger agreement. In the Alden suit, the wrongful acts were the board of directors' approval of a loan, quote unquote, that Amos made to JSA to fund the lawsuit against Alden. And in the COF suit, the wrongful acts are violations of federal securities law, violations of Indiana business corporation law, breaches of its articles in incorporation, and breaches of fiduciary duty by the directors in relation to approval of all of those transactions. So again, those wrongful acts in COF are not related to the wrongful acts alleged in the shareholder or Alden suit. I have to say I'm kind of confused on these wrongful acts and stuff. Does it matter when these wrongful acts occurred? It does matter. The whole purpose of this specific events exclusion is to allocate risk between time periods, right? Does the risk actually fall in the Illinois national policy period or does it actually fall in the prior period? And what this exclusion does to try to test that is it uses causation. All of these things ask, what was really the cause of the lawsuit that was filed, the COF lawsuit? And the problem with causation is that it's kind of tricky. You're familiar with the saying, for one of a nail the kingdom was lost? Well, that kind of demonstrates the problem with causation. You can always find a prior cause, and if you interpret these exclusions broadly, the result is going to be that you can always find something that happened before. So it does matter when the wrongful acts occurred. The wrongful acts alleged in the COF suit happened after the Illinois national policy became effective. All the TRS transactions, the Dutch auction tender offer, the transactions with the employee trust, all happened after the Illinois national policy took effect. So yes, it matters, and in this case it means that the exclusions don't apply. Unless the court has any other questions, I think I've... Well, I guess I'm still... I'm sorry, have I not answered your question yet? No, you did, but I guess we're talking about this, what is it, Roman numeral... It's Roman numeral 3, definition number 2. Yeah, in any claim alleging arising out of or based on, or in any way related directly or indirectly. Those are the words that are kind of key? Right, but what those words, directly or indirectly, are doing is linking. The claim that is the lawsuit must be somehow related to the wrongful acts alleged in that lawsuit. And you're saying some are just incidental and not material? Well, right. No, I'm saying that the wrongful acts in the COF lawsuit were alleged. They're right there. You don't need to find out if the lawsuit is somehow related to wrongful acts that weren't alleged. They're alleged in that lawsuit. So then we have the second step is to compare those wrongful acts to the wrongful acts that were alleged in the earlier lawsuit, the shareholder in the Alden suit. And as I've explained, they weren't related. But you're right, it matters that the wrongful acts that were the basis of the COF lawsuit, all of them happened during the Illinois national policy period. I still have some time, but unless you have questions, I have nothing further. Thank you very much. Thank you, Mr. Shoffman. Mr. Crick. Your Honors, Mr. Shockley indicated that the purpose of this exclusion was to allocate risk between time periods. But that's not really correct as it applies to the exclusion. We're not here arguing whether the events fall within the Illinois national policy period. Rather, we're arguing about whether the exclusion and the events at issue in the COF suit relate to or arise from the shareholder litigation and or the Alden action. And while MS began its argument today noting that there were different plaintiffs and different causes of actions and different time periods involved, that's not really the relevant inquiry either. The relevant inquiry is are the facts related or do the facts arise out of these previous lawsuits? And, in fact, if we adopted the test that was articulated today by MS, then the Alden action would not have been covered by CHUBB because it wouldn't have been related to the shareholder litigation because, of course, the Alden action involved different parties and different causes of action, different theories, et cetera. But, in fact, the Alden action was covered by CHUBB and it was not covered by National Union, whose policy with Illinois National included a very similar exclusion to the exclusion at issue here. What did CHUBB reject? CHUBB declined coverage for the COF lawsuit that Illinois National also declined coverage for. And, obviously, MS could have pursued coverage from CHUBB just as it did from Illinois National in this lawsuit. Was there any negotiation with CHUBB and your client? I don't believe that there's anything in the record related to that and I'm not aware of that. And I also want to address the finding in the preliminary injunction that the court found it unlikely that there was going to be a going private transaction. But it's important to note that even in the second amended complaint that did eliminate some of the motive and intent allegations that were discussed, the second amended complaint still alleged facts relating to how proposed amendments that would be possible as a result of the total return swap transaction meant that, quote, the likelihood of success in going private transactions at any will increase as there will be fewer requirements to be satisfied with respect to the preferred stock. And that was paragraph 57 of the second amended complaint. So I think that shows that even after the preliminary injunction hearing and order from the district court, there was still a relation between the shareholder litigation and the COF suit. And MS really has not addressed the very obvious relationship between the Alden action and the COF suit because the Alden settled its claim through this total return swap, which was the subject of the Core Opportunities Fund lawsuit. I also want to address this contention that the exclusion, as read by Illinois National, would somehow eliminate coverage for any securities claims. And the district court made this finding that if there was any overlap between one lawsuit and the other, then that would exclude coverage. That's never been Illinois National's contention. So the idea floated by the district court was if two lawsuits allege that MS had its principal place of business in Indianapolis, well, then they were related and there wouldn't be coverage. That's not the contention at all. There has to be a relation, which this court and Indiana courts have interpreted as a logical or causal connection between the lawsuits. But it certainly doesn't eliminate all coverage. And just by way of example, had MS been sued over rejecting maybe a proposal from a publicly traded company to acquire all of its shares, that would not have been swept within this exclusion. There was also employment practices liability insurance. So there were, again, this isn't a categorical exclusion like in Tiger. This is a specific event exclusion related to events that MS knew about and knew would be included in this policy, in that specific event exclusion in Endorsement 28. Thank you, Your Honors. Thank you, Mr. Craig. Thanks to all the counsel. Case is taken under advisement.